## EXHIBIT A

**PROPOSED INTERIM ORDER**
**[not being served with the Amended Motion]**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **KALERA INC.,**[1] | **CASE NO.: 23-90290** |
| **Debtor.** | |

**INTERIM ORDER (I) AUTHORIZING
KALERA, INC. TO OBTAIN POSTPETITION SECURED
FINANCING, (II) GRANTING LIENS AND PROVIDING
SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III)
AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING
ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY,
(VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of Kalera, Inc. ("Kalera" or the "Debtor") for entry of an interim order (this "Interim Order") and a final order (the "Final Order") under sections 105, 361, 362, 363, 364(c), 364(d)(1), 364(e), 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 2002-1, 4001-1(b), 4002-1(i), and 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (together, the "Bankruptcy Local Rules"), and the Procedures for Complex Chapter 11 Bankruptcy Cases (the "Complex Case Rules"), seeking *inter alia:*

(a)     authorizing the Debtor to obtain postpetition financing, consisting of senior secured superpriority, multi-draw term loans (the "DIP Loan(s)," and together with all other obligations under the DIP Loan Documents (as defined below), the "DIP Obligations") to be advanced and made available to the Debtor in the aggregate maximum principal amount of $1.13

---

[1] The last four digits of the Debtor's federal tax identification number is 7838. The Debtor's mailing address is Kalera, Inc., Gateway Business Center 23, 18000 East 40th Avenue, Aurora, CO 80011.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

million (such amount, the "<u>Committed Amount</u>"; such loan facility, (the "<u>DIP Facility</u>") from lender Sandton Capital Solutions Master Fund V, L.P. (the "<u>DIP Lender</u>").[3] under the terms of this Interim Order, the Final Order, and all other agreements, documents, instruments, delivered or executed in connection therewith, as hereafter amended, supplemented or otherwise modified from time to time, including the Budget (as defined below) (collectively, the "<u>DIP Loan Documents</u>") (A) to pay certain costs, fees and expenses related to this chapter 11 case (the "<u>Chapter 11 Case</u>") as provided for in this Interim Order; (B) subject to entry of the Final DIP Order (as defined below) to roll up and convert $1 million (the "<u>Roll-up Amount</u>") of the prepetition Bridge Loan (as defined below) into DIP Loans; and (C) to provide working capital and for other general corporate purposes of the Debtor.  As a result of the DIP Obligations, the DIP Lender will hold "DIP Credit Facility Superpriority Claims" as described herein;

(b)      authorizing the continued use of Cash Collateral (as defined below) by the Debtor effective as of the Petition Date;

(c)      granting the DIP Lender on behalf of the DIP Facility superpriority, administrative expense claim status to the DIP Lender in respect of the DIP Obligations;

(d)      granting to the DIP Lender valid, perfected, enforceable and non-avoidable first priority priming liens on and security interests in all now owned or hereafter acquired assets and property of the;

---

[3] The Debtor and the DIP Lender agree that the Committed Amount will provide the Debtor funding for approximately two weeks according to the Budget.  The Debtor and the DIP Lender anticipate (i) a further interim order approving an additional committed amount to fund operations for future weeks; and (ii) the final approval of a DIP Credit Agreement which will be filed with the Court.

(e)     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the Final Order, in each case, to the extent set forth herein;

(f)     subject to the Carve Out and any Permitted Liens, granting adequate protection to the Prepetition Lender (as defined below);

(g)     scheduling a final hearing (the "Final Hearing") to consider entry of the Final Order; and

(h)     granting related relief.

The Court having found that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court on April [6], 2023 (the "Interim Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion, the *Declaration of Mark Shapiro, Chief Restructuring Officer of Kalera, Inc., in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"),and at the Interim Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND CONCLUDED THAT:**

A.     Disposition. The Motion is granted on an interim basis in accordance with the terms of this Interim Order. Any objections, reservations of rights, and/or other statements with respect

to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, or settled are hereby denied and overruled on the merits.

B.     <u>Commencement of this Chapter 11 Case</u>. On April [3], 2023 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is continuing to operate its business as a debtor in possession under sections 1107 and 1108 of the Bankruptcy Code. No official committee of unsecured creditors (the "Committee") or chapter 11 trustee has been appointed in this Chapter 11 Case.

C.     <u>Jurisdiction and Venue</u>. This Court has jurisdiction over this Chapter 11 Case and the Motion pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court may enter an interim and final order consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief sought herein are sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1), 364(e), and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014, and Bankruptcy Local Rules 2002-1, 4001-1(b), 4002-1(i), and 9013-1.

D.     <u>Adequate Notice</u>. On the Petition Date, the Debtor filed the Motion with this Court pursuant to Bankruptcy Rules 2002, 4001, and 9014, and represent that it provided notice of the Motion and the Interim Hearing by electronic mail, facsimile, hand delivery, or overnight delivery to the following parties and/or their respective counsel as indicated below (collectively, the "<u>Notice Parties</u>"): (i) the Office of the United States Trustee for the Southern District of Texas; (ii) the holders of the 2-0 largest unsecured claims against the Debtor ; and (iii) any party that has requested notice pursuant to Bankruptcy Rule 2002. (Anyone else?)

E.     <u>Debtor's Stipulations on the Prepetition Obligations</u>. The Debtor acknowledges, admits, represents, stipulates, and agrees that (collectively, the "<u>Debtor's Stipulations</u>"):

(i)      *Prepetition Loans:* As of the Petition Date, the Debtor was indebted and liable, without defense, counterclaim or offset of any kind to the lender under (a) that certain Loan and Security Agreement, dated as of April 14, 2022 (as heretofore amended, supplemented, or otherwise modified, the "Prepetition Loans"), in the aggregate principal amount of approximately $30 million (the "Prepetition Facility") between Sandton Capital Solutions Master Fund V, L.P., as successor-in-trust to Farm Credit of Central Florida, ACA (the "Prepetition Lender") and the Debtor and (b) all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition Lender, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and all other related agreements, documents, and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto (all the foregoing, together with the Prepetition Loans, as all of the same have been supplemented, modified, extended renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "Prepetition Loan Documents"). All obligations of the Debtor arising under the Prepetition Loans or any other Prepetition Loan Documents, including under the Prepetition Facility and all loans, advances, debts, liabilities, principal, accrued or hereafter accruing interest, fees, costs, charges, indemnification obligations, expenses (including any and all reasonable and documented attorneys', accountants', appraisers', and financial advisors' fees and expenses that are chargeable, reimbursable, or otherwise payable, in each case, solely to the extent provided under the Prepetition Loan Documents), or other amounts, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations under the Prepetition Loan Documents or

Bridge Loan (as defined below) shall hereinafter be referred to collectively as the "Prepetition Obligations."

(ii)     *Bridge Loan*: On or about March 20, 2023, the Prepetition Lender and the Debtor entered into an amendment to the Prepetition Facility to permit the extension of up to an additional $1 Million in loans (the "Bridge Loan").

(iii)     The liens and security interests securing the Prepetition Obligations are referred to herein as the "Prepetition Liens" and the collateral to which such Prepetition Liens attach, the "Prepetition Collateral".

(iv)     *Prepetition Liens.*  The Prepetition Liens are continuing, legal, valid, binding, properly perfected, enforceable and nonavoidable first priority liens on an security interests in the Prepetition Collateral, including all of the Debtor's cash that constitutes Cash Collateral (define below).

(v)     *No Claims*. The Debtor has no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Lender, its successors and assigns (collectively, the "Prepetition Secured Parties") with respect to the Prepetition Loan Documents, the Prepetition Obligations, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, or other claims arising under or pursuant to sections 105, 510, 541, or 542 through 553, inclusive, of the Bankruptcy Code.

(vi)     *Release.* Subject to entry of the Final Order, the Debtor hereby stipulates and agrees that it forever, unconditionally and irrevocably releases, discharges and acquits the DIP Lender and the Prepetition Lender, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, and agents, past,

present, and future, and their respective heirs, predecessors, successors, and assigns (collectively, the "Releasees") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' fees), debts, liens, actions, and causes of action of any and every kind whatsoever, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the DIP Facility, the DIP Loan Documents, the Prepetition Facility, the Prepetition Loan Documents, and/or the transactions contemplated hereunder or thereunder including, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the DIP Lender and the Prepetition Lender; provided that the forgoing shall not release any claims against a Releasee that a court of competent jurisdiction determines results primarily from the bad faith, gross negligence, or willful misconduct of such Releasee. The Debtor further waives and releases any defense, right of counterclaim, right of set-off, or deduction to the payment of the Prepetition Obligations and the DIP Obligations which the Debtor now has or may claim to have, directly or indirectly against the Releasees, arising out of, connected with or relating to any and all acts, omissions, or events occurring prior to the Court entering this Interim Order.

(vii)      *Consent*.  The Prepetition Lender has consented to the terms of this Interim Order and is entitled to adequate protection as set forth herein for any diminution in the value of its interests in Prepetition Collateral from and after the Petition Date.

(viii)      *No Control.* Neither the DIP Lender nor the Prepetition Lender control the Debtor or its properties or operations, has authority to determine the manner in which any of the Debtor's operations are conducted or is a control person or insider of the Debtor or any of its

affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order, the DIP Facility, the DIP Loan Documents, the Prepetition Facility, and/or the Prepetition Loan Documents.

F.     <u>Cash Collateral</u>. Any and all of the Debtor's cash including cash and other amounts on deposit or maintained in any account or accounts by the Debtor and any amount generated by the collection of accounts receivable or other disposition of the Prepetition Collateral, and the proceeds of any of the foregoing, whether existing on the Petition Date or thereafter, constitutes the cash collateral (within the meaning of section 363(a) of the Bankruptcy Code) of the Prepetition Lender (the "<u>Cash Collateral</u>").

G.     <u>Use of DIP Facility and Cash Collateral</u>. The Debtor has an immediate and critical need to use the DIP Facility and Cash Collateral to preserve and operate its businesses and effectuate a restructuring of its businesses, which will be used in accordance with the terms of this Interim Order. Subject to entry of the Final Order, all of the outstanding Bridge Loan will be converted (or "rolled up") into DIP Obligations; <u>provided</u> that, pending entry of the Final Order, for each $1 drawn by the Debtor under the DIP Facility, $1 of the Bridge Loan shall convert or "roll up" into DIP Obligations. The Bridge Facility utilized as of the Petition Date and the amount in the Budget amount under the DIP Facility will be used for operating expenses. The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to avoid the objection of certain parties. Without the use of the DIP Facility and Cash Collateral, the Debtor will not have sufficient liquidity to be able to (i) pay its vendors, (ii) fund employee wages, benefits, and related obligations, and (iii) continue to operate its business. Moreover, the provisions the Interim Order were extensively negotiated and are the most favorable terms that the Debtor was able to obtain.

Approval of the DIP Facility will ensure the Debtor is able to maintain its operations, pursue this Chapter 11 Case, and maximize the value of its estate for the benefit of all stakeholders. Absent authorization to immediately use a portion of the DIP Facility and Cash Collateral, the Debtor's estate and its creditors will suffer immediate and irreparable harm.

       H.     <u>Roll-up of Bridge Loan</u>. Upon entry of the Final Order, without any further action by the Debtor or any other party, the outstanding principal, interest, and any other amounts under the Bridge Loan will be converted into DIP Obligations (the "<u>Roll-up Obligations</u>"); <u>provided</u> that, pending entry of the Final Order, for each $1 drawn by the Debtor under the DIP Facility, $1 of the Bridge Loan shall convert or "roll up" into DIP Obligations. The replacement and refinancing (or "roll-up") of the Bridge Loan shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the DIP Lender (who was previously the lender of the Bridge Loan) to fund the undrawn amounts, and provide other consideration to the Debtor, under the DIP Facility and not as payments under, adequate protection for, or otherwise on account of, the Bridge Loan. The Prepetition Lender would not otherwise consent to the use of its Cash Collateral or the subordination of its liens to the DIP Liens (as defined below), and the DIP Lender would not be willing to provide the DIP Facility or extend credit to the Debtor thereunder without the inclusion of the DIP Roll-Up Obligations in the DIP Obligations. Moreover, the replacement and refinancing of all outstanding amounts under the Bridge Loan into DIP Obligations will create greater availability under the DIP Facility and enable the Debtor to obtain urgently needed financing critical to administering this Chapter 11 Case and funding its operations. All security agreements in respect of the Bridge Loan being refinanced by the DIP Facility shall continue in full force and effect in favor of the DIP Lender.

I.      <u>Other Financing Unavailable</u>. As discussed in the First Day Declaration and the Declaration, the Debtor is unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(l) of the Bankruptcy Code or (b) under section 364(c)(l) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of their estates under section 364(c)(2) of the Bankruptcy Code or (y) a junior lien on encumbered assets of their estates under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(l) of the Bankruptcy Code from sources other than the DIP Lenders on terms more favorable than the terms of the DIP Facility. The only source of secured credit available to the Debtor, other than the continued use of Cash Collateral, is the DIP Facility. Financing on a postpetition basis on better terms is not otherwise available without granting the DIP Lender: (1) perfected security interests in and liens on the DIP Collateral; (2) superpriority claims and liens; (3) the other protections set for in this Interim Order; and (4) a full refinancing of the outstanding Bridge Loan.

J.      <u>Best Financing Presently Available</u>. The DIP Lender will as of the Petition Date provide the Debtor with financing solely on the terms and conditions set forth in this Interim Order (and, subject to entry by the Court, the Final Order) and the applicable DIP Loan Documents. After considering all of their alternatives, the Debtor has concluded, in an exercise of its sound business judgment, that the financing to be provided by the DIP Lender pursuant to the terms of this Interim Order (and, subject to entry by the Court, the Final Order) and the DIP Loan Documents, represents the best financing presently available. The DIP Lender has acted in good faith and therefore is entitled to the good faith protections under section 364(e) of the Bankruptcy Code. The DIP Lender's claims, superpriority claims, security interests, liens, and other protections granted pursuant to this Interim Order (and, subject to entry by the Court, the Final Order) and the

4872-8420-9499.1

applicable DIP Loan Documents will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Interim Order, the Final Order, or any other order, as provided in section 364(e) of the Bankruptcy Code.

K.    <u>Good Cause for Immediate Entry</u>. Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2. In particular, the authorization granted herein for the Debtor to enter into the DIP Facility, to continue using Cash Collateral and to obtain interim financing, including on a priming lien basis as set forth herein, is necessary to avoid immediate and irreparable harm to the Debtor and its estate. Entry of this Interim Order is in the best interest of the Debtor, its estate, and creditors. The terms of the DIP Facility (including the Debtor's continued use of Cash Collateral) are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

L.    <u>Arm's Length Negotiation</u>. The Debtor, the DIP Lender and the Prepetition Lender have negotiated the terms and conditions of the DIP Facility (including the Debtor's continued use of Cash Collateral) and this Interim Order in good faith and at arm's length, and any credit extended and loans made to the Debtor pursuant to this Interim Order shall be, and hereby are, deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

M.    <u>Adequate Protection for the Prepetition Secured Parties</u>. The Prepetition Secured Parties have acted in good faith regarding the DIP Facility and the Debtor's continued use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtor's estates and continued operation of their businesses, in accordance with the terms hereof. The

Prepetition Lender has agreed to not object at this time to the Debtor's use of the Prepetition Collateral, including the Cash Collateral, in accordance with the terms hereof. The Prepetition Secured Parties are entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to §§ 361, 363 and 364 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court at the Interim Hearing, as of the Petition Date the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) are fair and reasonable, reflect the Debtor's prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral; provided, that nothing in this Interim Order or the other DIP Loan Documents shall prejudice, limit, or otherwise impair the rights of any Prepetition Secured Party (for its benefit or the benefit of the other Prepetition Secured Parties) to seek new, different, or additional adequate protection, or assert the interests of any Prepetition Secured Party (for its benefit or the benefit of the other Prepetition Secured Parties); provided, further, that the Debtor's rights with respect to any such request are fully reserved and preserved.

       N.     <u>Order of the Court</u>. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor:

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

      1.     The Motion is granted on an interim basis, subject to the terms set forth herein.

      2.     Any objections, reservations of rights, and/or other statements with respect to the Motion that have not previously been withdrawn or resolved are hereby OVERRULED.

      3.     The Debtor is hereby authorized to enter into any such additional documents, instruments, and agreements as may be reasonably required by the DIP Lender to implement the terms or effectuate the purposes of and transactions contemplated by this Interim Order, the Final

Order (when entered by the Court) (collectively, this Interim Order, the Final Order, and such additional documents, instruments, and agreements, including any fee letters, lien subordination or priorities agreements, the "DIP Loan Documents"). The Debtor is authorized to execute and deliver the DIP Loan Documents and borrow money under the DIP Facility, on an interim basis, up to an aggregate principal amount not to exceed $ million; provided that, pending and subject to entry of the Final Order, for each $1 drawn by the Debtor under the DIP Facility, $1 of the Bridge Loan shall convert or "roll up" into DIP Obligations.

4.      DIP Liens. As used herein, "DIP Collateral" shall include all prepetition and postpetition tangible and intangible property and assets, whether real or personal of the Debtor, including, without limitation, all assets and property of the Debtor, including, without limitation, any and all assets property of the Debtor pledged under the DIP Loan Documents, and all cash, any investment of such cash, inventory, accounts receivable, including intercompany accounts (and all rights associated therewith), other rights to payment whether arising before or after the Petition Date, contracts, contract rights, chattel paper, goods, investment property, inventory, deposit accounts, and all amounts on deposit therein from time to time, equity interests, securities accounts, securities entitlements, securities, commercial tort claims and claims that may constitute commercial tort claims (known and unknown), books, records, plants, equipment, general intangibles, documents, instruments, interests in leases and leaseholds, interests in real property, fixtures, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter of credit rights, supporting obligations, machinery and equipment, patents, copyrights, trademarks, tradenames, other intellectual property, all licenses therefor, and all proceeds, rents, profits, products, and substitutions, if any, of any of the foregoing; provided that DIP Collateral shall not include any Avoidance Actions (as defined herein); provided, further, that the DIP Collateral shall

not include any title or interest in property or assets of the Debtor solely to the extent the granting of any liens thereto or thereon would constitute (a) an invalidation of ownership or unenforceability of any material right or title of the Debtor therein, or (b) a material breach or termination of any governing document or agreement pertaining thereto, unless in the case of each of the forgoing clauses (a) and (b), the applicable provision is rendered ineffective by applicable nonbankruptcy law or the Bankruptcy Code (the "Specified Property"). Notwithstanding anything else herein, DIP Collateral and the DIP Liens and Adequate Protection Liens (each as defined below) granted under this Interim Order shall attach to any proceeds, products, offspring or profits from all sales, transfers, dispositions or monetizations of any Specified Property. Effective as of the Petition Date and in each case perfected without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, or by possession or control, subject to the Carve Out and any Permitted Liens, the following security interests and liens are hereby granted to the DIP Lender:

(a)     Pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP Obligations are secured by a perfected first priority priming security interest and lien on all DIP Collateral (such security interest and lien, the "Priming Lien"), to the extent that such property and assets are subject to liens that secure the obligations of the Debtor under the Prepetition Loan Documents (collectively, the "Primed Liens"). The Priming Lien shall be senior (a) in all respects to the interests to the liens of the Prepetition Lender under the Prepetition Loans and the related security documents, and (b) to any liens granted to provide adequate protection in respect of any of the Primed Liens. The Primed Liens shall be primed by and made subject and subordinate to the Priming Liens.

(b)      Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Obligations are secured by a perfected first priority security interest and lien on all DIP Collateral of the Debtor (other than Avoidance Actions (as defined below)) to the extent such property and assets are not subject to valid, perfected, and non-avoidable liens as of the Petition Date (it being agreed and understood that solely the Final Order shall grant, for the benefit of the DIP Facility, a perfected security interest pursuant to this clause in proceeds of any successful claims and causes of action under Chapter 5 of the Bankruptcy Code ("Avoidance Actions")); and

(c)      Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Obligations are secured by a perfected junior-priority security interest and lien on all DIP Collateral of the Debtor to the extent that such property and assets are subject to valid, perfected, and unavoidable liens in favor of third parties that were in existence immediately prior to the Petition Date, or to valid and unavoidable liens in favor of third parties that were in existence immediately prior to the Petition Date that were perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code (other than the existing Prepetition Liens, which existing liens will be primed by this Interim Order), junior to the priority of such liens in favor of such third parties.

(d)      The foregoing liens and security interests are referred to herein as "DIP Liens".

(e)      This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the DIP Liens granted herein, effective as of the Petition Date, without any further action by the Debtor or the DIP Lender and without execution, filing or recordation of any financing statements, security agreements, mortgages, certificates or other agreements, documents or instruments. Notwithstanding the foregoing, the Debtor shall execute

15

and deliver to the DIP Lender such financing statements, mortgages, instruments, certificates, agreements, and other documents as the DIP Lender may requests from time to time.

5.       <u>DIP Superpriority Claims</u>. In addition to the liens and security interests granted to the DIP Lender pursuant to this Interim Order, in accordance with sections 364(c)(1), 503, and 507 of the Bankruptcy Code, all of the DIP Obligations (including, without limitation, all DIP Extensions of Credit (as defined below)) shall constitute allowed superpriority administrative expense claims (the "<u>DIP Superpriority Claims</u>"), subject to the Carve-Out but with priority over any and all administrative expenses of the Debtor, whether heretofore or hereafter incurred, of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 364, 365, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 1113, 1114, or any other provisions of the Bankruptcy Code.

6.       <u>Continuation of Prepetition Liens</u>. The liens granted to the Prepetition Secured Parties under the Prepetition Loan Documents, shall continue in full force and effect and shall continue to secure the obligations of the Debtor under the Prepetition Loans, <u>provided</u> that such liens are Primed Liens and junior to the DIP Liens.

7.       <u>DIP Roll-up Obligations</u>. Upon entry of the Final Order, without any further action by the Debtor or any other party, and as a condition to the provision of liquidity under the DIP Facility, all DIP Roll-up Obligations shall be replaced and refinanced and shall constitute DIP Obligations; <u>provided</u> that, pending entry of the Final Order, for each $1 drawn by the Debtor under the DIP Facility, $1 of the Bridge Loan Obligations shall convert or "roll up" into DIP Obligations.

8.       <u>Use of Cash Collateral and DIP Extensions of Credit</u>. The Debtor is hereby authorized to use Cash Collateral and the proceeds of any borrowings under the DIP Facility and

the other terms and conditions set forth in this Interim Order and the DIP Loan Documents and subject to and in accordance with the Budget (as defined below).  As a condition to the use of Cash Collateral and the DIP Facility, the Debtor shall be required to first utilize cash from receivables or any other source besides the DIP Facility; provided that if there is no cash available for use by the Debtor besides the DIP Facility or all cash has been reduced to zero, the Debtor is authorized to use the cash in the DIP Facility.

9.      DIP Extensions of Credit. All loans made to or for the benefit of the Debtor on or after the Petition Date in accordance with the DIP Loan Documents are herein referred to as the "DIP Extensions of Credit". The DIP Extensions of Credit: (a) shall be evidenced by the books and records of the DIP Lender; (b) shall bear interest payable and incur fees at a rate of 9%, and a default rate of 2%; (c) shall be secured in the manner specified below; (d) shall be payable in accordance with this Interim Order and any DIP Loan Documents; and (e) shall otherwise be governed by the terms set forth in this Interim Order and the other DIP Loan Documents. The DIP Lender shall have no obligation to make any DIP Extension of Credit or any other financial accommodation hereunder unless all conditions precedent to making DIP Extensions of Credit under this Interim Order have been satisfied or waived in accordance with the Interim Order.

10.      Adequate Protection for the Prepetition Secured Parties. In addition to all the existing security interests and liens previously granted to or for the benefit of the Prepetition Secured Parties, as adequate protection for, and to secure the payment of an amount equal to the diminution of the value of the Prepetition Collateral, due to the Debtor's sale, use, or lease of such Prepetition Collateral, and as an inducement for the Prepetition Secured Parties to permit the Debtor's use of the Cash Collateral as provided for in this Interim Order, the Prepetition Secured Parties are hereby granted, subject to the Carve Out, the following adequate protection (the

"Adequate Protection Obligations"), pursuant to sections 361, 363(e), 364(d)(1), and 507 of the Bankruptcy Code:

(a)     ***Adequate Protection Liens.*** Effective as of the Petition Date and in each case perfected without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the following security interests and liens are hereby granted to the Prepetition Secured Parties: A valid, binding, continuing, enforceable, fully-perfected replacement (and if applicable, new) security interest in and lien on the DIP Collateral (the "Adequate Protection Liens"); provided that, notwithstanding anything in this Interim Order to the contrary. The Adequate Protection Liens are junior to the liens securing the DIP Facility.

(b)     ***Adequate Protection Claims.*** An allowed administrative expense claim against the Debtor on a joint and several basis with priority over all other administrative claims in the Chapter 11 Case (subject only to the Carve Out), including all claims of the kind specified under sections 503(b) and 507(b) of the Bankruptcy Code (the "Adequate Protection Claims"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtor, excluding the Carve Out. The Adequate Protection Claims are junior to the DIP Superpriority Claims.

(c)     ***Reporting.*** As additional adequate protection to the Prepetition Secured Parties, the Debtor shall provide to the Prepetition Secured Parties all reports and notices delivered to the DIP Lender in accordance with this Interim Order.

11.    Budget[4]. The budget annexed hereto as **Exhibit 1** (as it may be updated periodically in accordance with the DIP Loan Documents and subject to any Permitted Variance (as defined herein), the "Budget"), hereby is approved subject to "Permitted Variances," which means for (a) the period beginning on the Petition Date through and including the second Saturday following the Petition Date and (b) each Saturday thereafter (each week commencing on the Sunday of such week) but calculated on a rolling 3 week basis to account for timing of payment variances, unless otherwise agreed to by the Lender (the applicable "Testing Period"): (i) any favorable disbursement variance, and (ii) any unfavorable disbursement variance (other than disbursements for professional fees of the Lender and fees of the Office of the United States Trustee) of no more than 10% for actual disbursements measured on a cumulative basis (on a line-item basis) as compared to the budgeted disbursements set forth in the Budget with respect to the applicable Testing Period. The Permitted Variances with respect to each Testing Period shall be determined and reported to the Lender, not later than 5:00 p.m. Eastern Time on each Wednesday immediately following the end of each such Testing Period. Additional variances, if any, from the Budget, and any proposed changes to the Budget, shall be subject to the approval of the Lender.

12.    Subject to the Carve Out, the DIP Lender's consent to the Budget shall not be construed as consent to the use of DIP Extensions of Credit or Cash Collateral beyond the Termination Date with respect to the DIP Extensions of Credit, regardless of whether the aggregate funds shown on the Budget have been expended. The Debtors shall provide a copy of any revised or updated budget to the Prepetition Lender, and counsel to the Committee, if any. In no way shall the Budget operate or be construed as a cap or limitation on the Adequate

---

[4] NTD: Line item restrictions and cash management restrictions to be discussed.

Protection Obligations payable pursuant to this Interim Order or professional fees of the Debtor Professionals as provided for in the Carve Out (defined herein).

13. <u>Weekly Reporting</u>. WLB will deliver a weekly reporting package to the DIP Lender, the legal counsel and financial advisers to the DIP Lender, and counsel to the Committee (if any).

14. <u>DIP Lender Expenses</u>. The fees and expenses relating to the DIP Facility are authorized and approved for payment without further order of the Court. The Debtor is authorized and directed to pay the reasonable and documented costs and expenses of the DIP Lender associated with the negotiation, preparation, closing, execution, delivery, administration, and monitoring of the DIP Loan Documents and DIP Loans and any modification, amendment, or waiver with respect thereto, as well as proceedings before the Court relating to the DIP Facility or this Chapter 11 Case (including, without limitation, the reasonable fees, disbursements and other charges of counsel, financial advisors and other professionals and advisors) (the "<u>DIP Lender Expenses</u>"). The DIP Lender Expenses shall be payable to the extent consistent with, and permitted under the amounts projected by, the Approved Budget (as it may be amended).

15. The DIP Lender Expenses are not subject to the provisions of section 327, 328, 329, 330, or 331 of the Bankruptcy Code and will be paid pursuant to this Interim Order without further order of this Court, except in the event the Court is required to adjudicate a dispute relating to the payment of the DIP Lender Expenses.

16. <u>Cash Management</u>. The Debtor shall maintain its cash management arrangements in a manner consistent with that described in the orders approving the Debtor's motion for authorization to maintain its existing cash management system, which orders shall be in form and substance acceptable to the DIP Lender.

17.     <u>Validity of DIP Loan Documents</u>. The DIP Loan Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms thereof. No obligation, payment, transfer or grant of security under the DIP Loan Documents as approved under this Interim Order shall be stayed, restrained, voided, voidable, or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

18.     <u>Preservation of Liens and Rights Granted Under this Interim Order</u>. Except as otherwise expressly provided for herein (including with respect to the Carve Out), or permitted under the Interim Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Lender or to the Prepetition Secured Parties, respectively, shall be granted or allowed while any portion of the DIP Facility (or any refinancing thereof in accordance with the DIP Loan Documents) or the commitments thereunder or the DIP Obligations remain outstanding or until the payment in full of the Prepetition Obligations. Subject to the Carve Out and any Permitted Lien, the DIP Liens, the Adequate Protection Liens, and the Prepetition Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or (ii) subordinated to or made pari passu with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Debtor.

19.     <u>Protection of DIP Lender's Rights</u>.

(a)     So long as no Termination Event shall have occurred and be continuing (in each case as defined below) under this Interim Order and which remain outstanding with respect

to the Debtor, the Prepetition Secured Parties shall (i) have no right to and take no action to foreclose upon or recover in connection with the liens granted thereto pursuant to the Prepetition Loan Documents or this Interim Order, or otherwise seek to exercise or exercise any enforcement rights or remedies against any DIP Collateral or in connection with any Adequate Protection Liens or on account of any claims, other than as set forth herein, including, without limitation, the right to credit bid, (ii) be deemed to have consented to any disposition of, or release of liens on, any DIP Collateral, to the extent such disposition or release is authorized under the DIP Loan Documents or otherwise agreed to by the DIP Lender, (iii) not file any financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral unless, solely as to this clause (iii), the DIP Lender files financing statements or other documents to perfect the liens granted pursuant to this Interim Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date, and (iv) deliver or cause to be delivered, at the Debtor's cost and expense, any termination statements, releases and/or assignments in favor of the DIP Lender or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of the DIP Collateral subject to any sale or disposition in accordance with the terms hereof.

(b)     A "Termination Event" means: (i) the occurrence of an Event of Default as defined herein, or (ii) this Interim Order ceasing to be in full force and effect for any reason (each a "Termination Event"). Upon the occurrence and during the continuance of a Termination Event, unless such Termination Event is waived by the DIP Lender, at the end of five business days after giving written notice of such default (the "Remedies Notice Period"), the DIP Lender may (1) declare (a) the commitment of the DIP Lender as to the DIP Facility to be terminated,

whereupon such commitments and obligation shall be terminated; (b) all DIP Obligations immediately due and owing, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Debtor, whereupon all DIP Obligations shall be immediately due and payable; and (c) subject to the Carve Out, that the Debtor shall have no right to request or use any proceeds of any DIP Extensions of Credit, other than towards the satisfaction of the DIP Obligations; and (2) and exercise all rights and remedies provided in this Interim Order and the DIP Loan Documents, as applicable. The Debtor shall provide a line-by-line itemization of the Budget to the DIP Lender. The Debtor and the DIP Lender consent to a hearing on an expedited basis to consider whether a Termination Event has occurred and whether the automatic stay may be lifted so that the DIP Lender may exercise any and all of its rights and remedies in accordance with this Interim Order. In any hearing regarding any Termination Event, except as otherwise provided in Paragraph 45, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and no party shall be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the DIP Lender set forth in this Interim Order or the DIP Loan Documents.

(c)     No rights, protections, or remedies of the DIP Lender granted by the provisions of this Interim Order or the DIP Loan Documents shall be limited, modified, or impaired in any way by (i) any actual or purported withdrawal of the consent of any party to the Debtor's authority to use Cash Collateral, (ii) any actual or purported termination of the Debtors' authority to use Cash Collateral, or (iii) the terms of this Interim Order or any other order or stipulation related to the Debtor's use of Cash Collateral or the provision of adequate protection to any party.

20.     <u>Interest</u>. So long as there is no Event of Default under Interim Order or modification of hereof, the Prepetition Secured Parties will not be paid current payment of interest during the Chapter 11 Cases but interest will accrue on such claims and be included in the allowed amount of their claims.

21.     <u>Termination of DIP Facility</u>. Subject to the Carve Out, unless otherwise agreed to by the DIP Lender in writing in accordance with this Interim Order, the Debtor's right to draw under the DIP Facility shall terminate upon the occurrence and during the continuation of Event of Default as provided herein.

22.     <u>Events of Default</u>. Except as otherwise provided in this Interim Order, or to the extent the DIP Lender may otherwise agree in writing, and subject to the Remedies Notice Period and opportunity to cure set forth in paragraph 18(b) of this Interim Order, any violation of any of the terms of this Interim Order or any occurrence of an "Event of Default" reversal, vacatur or stay of the effectiveness of the DIP Orders except to the extent stayed or reversed within five (5) Business Days, each an Event of Default hereunder:

    i.   a failure by the Debtor to comply with any material provision of the Interim Order (except where such failure would not materially and adversely affect the DIP Lender);

    ii.   dismissal of the Chapter 11 Case or conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code;

    iii.   appointment of a Chapter 11 trustee or examiner with enlarged powers relating to the operation of the business of the Debtor or the Debtor shall file a motion or other pleading seeking such appointment;

4872-8420-9499.1

iv. any sale of all or substantially all assets of the Debtor pursuant to Section 363 of the Bankruptcy Code, unless such sale is conducted in accordance with the Bid Procedures and consented to by the DIP Lender; and

v. failure to meet an Interim Milestone, unless extended or waived pursuant by the prior written consent of the Lender; provided, however, to the extent Borrower shall fail to meet a Interim Milestone despite good faith efforts, the Lender shall, in its reasonable discretion, consider extending such Milestone and amending the Budget.

23.     <u>Interim Milestones</u>. As a condition to the DIP Facility and the use of Cash Collateral, absent the consent of the DIP Lender and Prepetition Lender, the failure of the Borrower to comply with any of the following milestones ("<u>Interim Milestones</u>") shall constitute an immediate Event of Default under the DIP Facility and permit the DIP Lender on behalf of itself and the Prepetition Lender to exercise their respective rights and remedies provided for in the Interim Order.  DIP Lender and Prepetition Lender hereby entitled to performance of the following milestones by the dates set forth below (or such later date as may be agreed by the DIP Lender and Prepetition Lender, and for the avoidance of doubt, absent the consent of the DIP Lender and Prepetition Lender, the failure of the Borrower to comply with any of the Interim Milestones shall constitute an immediate Event of Default under the DIP Facility and permit the DIP Lender on behalf of itself and the Prepetition Lender to exercise their respective rights and remedies provided for in the Interim Order: (a) No later than five (5) business days after the Petition Date, the Bankruptcy Court shall have entered the Interim Order; (b) No later than 10 business days after the Petition Date, the Borrowers shall have filed a motion seeking bid procedures for the sale of its assets and operations under an asset purchase agreement with the Senior Secured Lender as the stalking horse bidder with customary stalking horse protections (the "Acquired Assets"); and (c)

No later than twenty-five (25) calendar days after the Petition Date, the Bankruptcy Court shall have entered the Final Order.

24.     <u>Termination of Consent to Use of Cash Collateral and DIP Facility</u>.  At the DIP Lender's election, the earliest to occur of: (a) the date on which the DIP Lender provides, via facsimile or overnight mail, written notice to the Borrower, counsel for the Borrower and counsel for any official committee of unsecured creditors of the occurrence of an Event of Default (as set forth herein); (b) the date of the acceleration of any outstanding extension of credit under the Borrower's DIP Facility; (c) the date of entry of an order confirming the Plan to which the DIP Lender objects; (d) the effective date of a confirmed plan agreeable to the DIP Lender in the Borrower's chapter 11 case; (e) the entry of an order converting the Borrower's chapter 11 case to a case under chapter 7 of the Bankruptcy Code; (f) the entry of an order dismissing the Borrower's chapter 11 case; (g) the entry of an order appointing a chapter 11 trustee or examiner in the Borrower's chapter 11 case; and (h) the failure of the Borrower to obtain entry of this order or a Final Order approving the DIP Facility, each of which must be in a form acceptable to the DIP Lender.  A termination fee of two percent (2%) earned upon the earlier of the sale of substantially all of the Borrower's assets or confirmation of a chapter 11 plan to which the DIP Lender objects.

25.     <u>Modifications of DIP Loan Documents</u>. The Debtor and the DIP Lender are hereby authorized to implement, in accordance with the terms of the DIP Loan Documents, any non-material modifications of the DIP Loan Documents (other than this Interim Order) without further notice, motion, or application to, order of or hearing before, this Court. Any material modification or amendment to the DIP Loan Documents shall only be permitted pursuant to an order of this Court (which may be sought within (3) business days), upon notice to counsel for the Committee, if any, the U.S. Trustee, and the Prepetition Secured Parties, <u>provided</u>, <u>however,</u> that any

forbearance from, or waiver of, (a) a breach by the Debtor of a covenant representation or any other agreement or (b) a Default or an Event of Default (including breach of any Interim Milestone), in each case under the DIP Loan Documents shall not require an order of this Court.

26.     <u>DIP Lender, Prepetition Agent Authorization</u>. Notwithstanding any provision of the Prepetition Loan Documents or the DIP Loan Documents, each of the DIP Lender and the Prepetition Lender is hereby authorized to make any and all account transfers requested by the Debtor in accordance with the Budget and this Interim Order, and is further authorized to take any other action reasonably necessary to implement the terms of this Interim Order.

27.     <u>Waiver of Requirement to File Proofs of Claim</u>.

(a)     The DIP Lender shall not be required to file proofs of claim in this Chapter 11 Case or any successor case in order to maintain their respective claims for payment of the DIP Obligations under the applicable DIP Loan Documents. The statements of claim in respect of the DIP Obligations set forth in this Interim Order, together with the evidence accompanying the Motion and presented at the Interim Hearing are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

(b)     The Prepetition Secured Parties shall not be required to file proofs of claim in this Chapter 11 Case or any successor case in order to maintain their respective claims for payment of the Prepetition Obligations under the applicable Prepetition Financing Documents or for payment and performance of the Adequate Protection Obligations. The statements of claim in respect of the Prepetition Obligations and the Adequate Protection Obligations set forth in this Interim Order, together with the evidence accompanying the Motion and presented at the Interim Hearing are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

4872-8420-9499.1

28.   <u>Automatic Stay</u>.  The automatic stay imposed by Bankruptcy Code § 362 is hereby modified, to the extent necessary, to implement and effectuate the terms and conditions of this Interim Order.

29.   <u>Carve Out</u>.

(a)      The DIP Lender's liens, claims and security interests in the DIP Collateral and their Super-Priority Claim, and the Prepetition Lender's liens, claims and security interests in the Prepetition Collateral, the Senior Adequate Protection Liens, and the Senior Adequate Protection Super-Priority Claim, shall, in each instance, be subject only to the Permitted Existing Liens and the right to payment of the following (the "<u>Carve-Out</u>"):

(i)      All reasonable fees and expenses up to $50,000 incurred by a trustee appointed under Bankruptcy Code § 726(b);

(ii)      Statutory fees payable to the U.S. Trustee pursuant to 28 U.S>C. § 1930(a)(6);

(iii)      Fees payable to the Clerk of this Court; and

(iv)      Subject to the terms and conditions of this Interim DIP Order, (a) the unpaid outstanding reasonable fees and expenses actually incurred on or after the Petition Date and prior to the Carve-Out Trigger Date (as defined below), and approved and allowed by a order of the Court pursuant to Bankruptcy Code §§ 326, 328, 330 or 331 by attorneys, accountants and other professionals retained by the Debtor and any Committee under Bankruptcy Code §§ 327 or 1103(a) (collectively, the "Professionals"), regardless of when such Bankruptcy approval is given, in an amount not to exceed the amounts set forth for each such Professional (on a Professional-by-Professional basis) for the periods prior to the Carve-Out Trigger Date in the Budget; (b) the fees payable to the independent directors of the Debtors

following the Petition Date and before the Carve-Out Trigger Date in the amounts set forth in the Approved Budget, plus one additional month; (c) the reasonable fees and expenses actually incurred, and approved and allowed by a final order of the Court pursuant to Bankruptcy Code §§ 326, 328, 330 or 331 of the Bankruptcy Code, by the Professionals after the Carve-Out Trigger Date in an aggregate sum not to exceed $250,000 (the "Professional Carve-Out Cap"); and (d) the amount of any accrued but unpaid payroll, postpetition vendor claims, and any associated tax expenses that may become due on the Carve-Out Trigger Date as set forth in the Budget. The "Carve-Out Trigger Date" means the date when written notice is provided by the DIP Lender to the Debtor, the United States Trustee and counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases (a "Committee") (if a Committee has been appointed) identifying an Event of Default.

30.    Any payment made after the Carve-Out Trigger Date (in respect of fees and expenses incurred after the Carve-Out Trigger Date) shall reduce the Professional Carve-Out Cap on a dollar for dollar basis. Prior to the occurrence of the Carve-Out Trigger Date, the Carve-Out for Professionals shall be funded on a weekly basis to a trust account of the Debtor's counsel in the amounts specified in the Approved Budget for distribution to such Professionals once such fees and expenses are allowed by the Court. Following the occurrence of the Carve-Out Trigger Date, any remaining fees and expenses in the amount specified in the Budget for the Professionals through the Carve-Out Trigger Date and the Professional Carve-Out Cap shall be funded to a trust account of the Debtor's counsel or the Debtors' financial advisor, and distributed to such Professionals once such fees and expenses are allowed by the Bankruptcy Court. Notwithstanding the foregoing, none of the Carve-Out, proceeds from the DIP Facility or Cash Collateral may be used (i) to investigate (other than by a Committee, subject to a cap of $25,000, and further subject

to the limitations set forth in Paragraph 19 of this Interim DIP Order) or challenge in any respect the validity, perfection priority, extent or enforceability of the Prepetition Loan Documents or the Prepetition Liens; (ii) to delay, challenge or impede any rights of the DIP Lender under any of the DIP Loan Documents or this Interim DIP Order; or (iii) to pursue claims or causes of action of any kind against the DIP Lender or the Prepetition Lender in their respective capacities as agents or lenders under any of the DIP Loan Documents or the Prepetition Loan Documents, as the case may be.

31.     Except to the extent permitted under paragraph 33 above, none of the DIP Loans, proceeds thereof, or the DIP Collateral, including the Cash Collateral may be used to fund, directly or indirectly, any effort to: (a) object to or contest in any manner, or raise any defenses to the validity, perfection, priority, or enforceability of (i) the DIP Obligations owing to the DIP Lender or the DIP Liens in favor of the DIP Lender securing such DIP Obligations or (ii) the Prepetition Obligations or the Prepetition Liens; or (b) assert any claims or causes of action of any type against the (i) DIP Lender or (ii) Prepetition Lender including, without limitation, any avoidance actions under Chapter 5 of the Bankruptcy Code, or any claim or cause of action under (i) the DIP Facility against the DIP Lender or (ii) the Prepetition Agreement against the Prepetition Lender.

32.     No Direct Obligation to Pay Allowed Professional Fees. Except as otherwise provided in this Interim Order, neither the DIP Lender nor the Prepetition Lender shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Lender or the Preposition Lender in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtor has sufficient funds to pay

such compensation or reimbursement, except to the extent consistent with funding the Budget. The DIP Lender and the Prepetition Lender reserve all rights to object to the payment or reimbursement of any fees or disbursements of any Professional Persons or other parties seeking substantial contribution incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.

33.     Subject to entry of the Final Order, the stipulations and admissions contained in this Interim Order, including, without limitation, in recital Paragraphs E of this Interim Order, shall be binding on the Debtor's estate and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtor) and all parties in interest, including, without limitation, any Committee, unless (a) any Committee, or another party in interest (other than any of the Debtors) with standing and requisite authority, has timely commenced a contested matter or adversary proceeding (a "Challenge") challenging the amount, validity or enforceability of the Prepetition Obligations, the perfection or priority of the Prepetition Liens or otherwise asserting any objections, claims or causes of action (including, without limitation, any actions for preferences, fraudulent conveyances, or other avoidance power claims), or the "roll-up" of the Bridge Loan Obligations on behalf of the Debtors' estates against the Prepetition Secured Parties relating to the Prepetition Obligations or the Prepetition Liens from the later of (a) sixty (60) days after entry of this Interim Order and (b) sixty (60) days after the formation of the Committee (if any). If no such Challenge is timely commenced and sustained as of such dates then, without further order of the Court, to the extent not theretofore indefeasibly repaid, satisfied, or discharged, as applicable, (x) the claims, liens and security interests of the Prepetition Lender, , and the Bridge Lenders shall, without further order of the Court, be deemed to be finally allowed for all purposes in the Chapter 11 Cases and any subsequent Chapter 7 Cases

31

and shall not be subject to challenge or objection by any party in interest as to validity, priority, amount or otherwise, and (y) without further order of the Court, the Debtors and their estates shall be deemed to have released any and all claims or causes of action against the Prepetition Secured Parties with respect to the Prepetition Term Loan Documents, the Bridge Loan Documents, or the Prepetition Notes Documents or any related transactions. Notwithstanding anything to the contrary herein, if no Challenge is timely commenced, the stipulations contained in recital Paragraph E of this Interim Order shall be binding on the Debtors' estates, the Committee, and all parties in interest. If any such Challenge is timely commenced and/or sustained, the stipulations contained in recital Paragraph E shall nonetheless remain binding on the Debtors' estates, any Committee and all parties in interest, except to the extent that such stipulations were expressly challenged in such Challenge. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any committee appointed or formed in the Chapter 11 Cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges, without prior express Court approval.

34.    <u>Specified Leases</u>. Notwithstanding anything to the contrary in the Motion, the DIP Loan Documents, or the Interim Order, for purposes of this Interim Order, in no event shall the DIP Collateral include or the DIP Liens or Adequate Protection Liens granted under this Interim Order attach to any lease or other real property right, to which any Debtor is a party or any of such relevant Debtor's rights or interests thereunder, if solely and for so long as the grant of such security interest would constitute or result in: (a) the abandonment, invalidation, or unenforceability of any material right or title of the Debtor therein, or (b) a material breach or termination pursuant to the terms of, or a material default under, any such lease or other real property right pursuant to any provision thereof, unless, in the case of each of clauses (a) and (b),

4872-8420-9499.1

the applicable provision is rendered ineffective by applicable non-bankruptcy law or the Bankruptcy Code (such leases the "Specified Lease"); provided that, the foregoing shall not preclude any counterparty to a Specified Lease from an opportunity to be heard in the Court on notice with respect to whether applicable non-bankruptcy law or the Bankruptcy Code renders such provision ineffective if requested by the non-Debtor party to the Specified Lease, and the Court shall retain jurisdiction to hear and adjudicate issues related thereto. Notwithstanding anything else herein, DIP Collateral shall include and the DIP Liens and Adequate Protection Liens granted under this Interim Order shall attach to any proceeds, products, offspring or profits from all sales, transfers, dispositions or monetizations of any Specified Lease.

35.     Limitation on Charging Expenses Against Collateral. Subject to entry of the Final Order, (i) no costs or expenses of administration of the chapter 11 cases, successor cases or any other future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code shall be charged against or recovered from the DIP Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or equity and (ii) the Debtor (and any successor thereto, including any representatives thereof, including any trustees appointed in the chapter 11 cases or any successor cases) shall be deemed to have waived any rights, benefits or causes of action under section 506(c) of the Bankruptcy Code as they may related to or be asserted against the DIP Lender or the Prepetition Lender, or the DIP Collateral or Prepetition Collateral. Nothing contained in this Interim Order, shall be deemed a consent by the DIP Lender or the Prepetition Secured Parties to any charge, lien, assessment or claim against, or in respect of, the DIP Collateral or the Prepetition Collateral under 506(c) of the Bankruptcy Code or otherwise.

33

36.     <u>Payments Free and Clear</u>. Any and all payments or proceeds remitted to the DIP Lender or the Prepetition Secured Parties pursuant to the provisions of this Interim Order or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, subject to the entry of the Final Order, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b) of the Bankruptcy Code, and solely in the case of payments made or proceeds remitted after the delivery of a Carve Out Trigger Notice, subject to the Carve Out in all respects.

37.     <u>No Marshaling/Applications of Proceeds</u>. Subject to entry of the Final Order, the DIP Lender, and the Prepetition Secured Parties shall not be subject to the equitable doctrine of 'marshaling' or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Interim Order and the DIP Loan Documents notwithstanding any other agreement or provision to the contrary.

38.     <u>Section 552(b)</u>. Subject to entry of the Final Order, the DIP Lender, and the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Lender, or the Prepetition Secured Parties in any respect.

39.     <u>Limitation of Liability</u>. Subject to the entry of the Final Order, in determining to make any DIP Extensions of Credit, permitting the use of Cash Collateral, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order (or any final order), the DIP Loan Documents, or the Prepetition Loan Documents, as applicable, none of the DIP Lender,

or the Prepetition Secured Parties, or any successor of any of the foregoing or any predecessors of the Prepetition Lender, shall be deemed to be in control of the operations of the Debtor or any affiliate (as defined in section 101(2) of the Bankruptcy Code) of the Debtor, or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor or any affiliate of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute). Furthermore, nothing in this Interim Order, the DIP Loan Documents or, the Prepetition Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Prepetition Secured Parties, or any successor of any of the foregoing or any predecessors of the Prepetition Lender, of any liability for any claims arising from the prepetition or postpetition activities of the Debtor or any affiliate of the Debtor.

40.     Exculpation. Nothing in this Interim Order, the DIP Loan Documents, the Prepetition Loan Documents or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender, the Prepetition Lender (or any predecessor thereof) or any other Prepetition Secured Party any liability for any claims arising from the prepetition or postpetition activities of the Debtor in the operation of their businesses, or in connection with their restructuring efforts; provided that the foregoing exculpation with respect to prepetition activities involving any Prepetition Secured Party is subject to the Challenge set forth in this Interim Order. In addition, (a) the DIP Lender, the Prepetition Lender (and any predecessor thereof) and the other Prepetition Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any

diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and (b) all risk of loss, damage, or destruction of the DIP Collateral shall be borne by the Debtors.

41. <u>Indemnification</u>. The Debtor shall indemnify and hold harmless the DIP Lender in its capacities as such, and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (the "Indemnified Parties") from and against any and all claims, damages, losses, liabilities, and expenses (including, without limitation, reasonable fees and expenses of counsel) that may be incurred by or asserted or awarded against any Indemnified Party, in each case arising out of or in connection with or by reason of, or in connection with the preparation for a defense of, any investigation, litigation or proceeding arising out of, related to or in connection with (a) the DIP Facility, the transactions contemplated thereby and in the DIP Loan Documents, and any use made or proposed to be made with the proceeds thereof and (b) the Chapter 11 Case, except in either instance for any conduct that is determined by final order to have been the result of gross negligence or intentional misconduct.

42. <u>Credit Bidding</u>. Subject to entry of the Final Order, the Prepetition Lender shall have the unqualified right to credit bid (i) up to the full amount of the Prepetition Obligations in any sale of the DIP Collateral (or any part thereof), (ii) the Adequate Protection Obligations, including the Adequate Protection Claim, and (iii) any unpaid amounts due and owing to the Prepetition Secured Parties under this Interim Order, without the need for further Court order authorizing the same, and whether such sale is effectuated through section 363 or 1129 of the

Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise. Subject to and effective upon entry of the Final Order, the DIP Lender shall be permitted to credit bid some or all of the outstanding DIP Obligations as consideration in any sale of DIP Collateral (or any part thereof), without the need for further Court order authorizing the same, and whether that sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725, or otherwise.

43.     Monitoring of Collateral. During normal business hours and after advanced written notice to the Debtor's counsel (email shall suffice), the Prepetition Secured Parties and, the DIP Lender, and their representatives, consultants and advisors, shall be given reasonable access to the Debtor's books, records, assets and properties for purposes of monitoring the Debtor's business and the value of the DIP Collateral, and shall be permitted to conduct, at their discretion and at the Debtor's cost and expense, field audits, collateral examinations and inventory appraisals in respect of the DIP Collateral.

44.     No Third Party Rights. This Interim Order does not create any rights for the benefit of any party, creditor, equity holder or other entity other than the DIP Lender, the Prepetition Secured Parties, and the Debtor, and their respective successors and assigns.

45.     Rights Preserved. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly the DIP Lender and any of the Prepetition Secured Parties' right to seek any other or supplemental relief in respect of the Debtor, including the right to seek new, different or additional adequate protection, as applicable, or the Debtor's rights to oppose such relief. Nothing contained in this Interim Order shall be deemed a finding by the Court or an acknowledgement by any of the Prepetition Secured Parties that the adequate protection granted in this Interim Order does in fact

adequately protect the relevant Prepetition Secured Parties against any diminution in value of the Prepetition Collateral.

46.     <u>Protection under Section 364(e) of the Bankruptcy Code</u>. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any DIP Obligations or Adequate Protection Obligations owing to the DIP Lender, or the Adequate Protection Parties, as applicable, incurred prior to the actual receipt by such entities of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP Loan Documents with respect to any DIP Obligations or Adequate Protection Obligations owing to the DIP Lender or the Adequate Protection Parties, as applicable. Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or the incurrence of DIP Obligations or Adequate Protection Obligations owing to the Adequate Protection Parties by the Debtor prior to the actual receipt by the Adequate Protection Parties of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Interim Order, and the Adequate Protection Parties shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code, this Interim Order and the other DIP Loan Documents with respect to all uses of Cash Collateral and the incurrence of DIP Obligations and Adequate Protection Obligations owing to the Adequate Protection Parties.

47.     <u>Binding Nature of Order</u>. The provisions of this Interim Order shall be binding upon the Debtor and its successors and assigns (including, without limitation, any trustee or other fiduciary hereafter elected or appointed for or on behalf of the Debtor's estate or with respect to its property).

48.    <u>Survival of Order</u>. Solely with respect to the DIP Lender and the Prepetition Secured Parties, the provisions of this Interim Order and any actions taken pursuant thereto (a) shall survive the entry of any order: (i) confirming any plan of restructuring in any of the Chapter 11 Cases; (ii) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; or (iii) dismissing any of the Chapter 11 Cases; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Interim Order shall maintain their priority as provided by this Interim Order until (x) all of the DIP Obligations are indefeasibly paid in full and discharged in accordance with the DIP Loan Documents and (y) the obligations of the Prepetition Secured Parties are paid in full. The DIP Obligations shall not be discharged by the entry of any order confirming any plan in any of the Chapter 11 Cases that does not provide for payment in full of the DIP Obligations or such other treatment of the DIP Obligations as may be agreed to by the DIP Lender.

49.    <u>Priority of Terms</u>. To the extent of any conflict between or among the Motion, the DIP Loan Documents, and this Interim Order, the terms and provisions of this Interim Order shall govern.

50.    <u>Entry of Interim Order; Effect</u>. This Interim Order shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof, notwithstanding the possible application of Fed. R. Bankr. P. 6004(h), 7062, 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Interim Order on this Court's docket in this Chapter 11 Case. Any findings of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

51.    <u>Permitted Liens.</u> Pending the final hearing, Permitted Liens shall include the following for the purposes of this Interim Order:

a.      Liens for taxes, assessments or other governmental charges, not yet due or which are being contested by the Debtor;

b.      Liens of carriers, warehousemen, mechanics, materialmen, repairmen, landlords or other like Liens imposed by Law or arising in the ordinary course of business which are not overdue for a period of more than 60 days or which are being contested by the Debtors;

c.      Liens, pledges of or deposits in the ordinary course of business in connection with (i) insurance, workers compensation, unemployment insurance and social security legislation, (ii) contracts, bids, government contracts, and surety, appeal, customs, performance and return-of-money bonds and (iii) other similar obligations (exclusive of obligations in respect of the payment for borrowed money), whether pursuant to contracts, statutory requirements, common law or consensual arrangements, other than any Lien imposed by ERISA;

d.      Liens arising in the ordinary course of business consisting of deposits to secure the performance of bids, trade and leases (other than Indebtedness), statutory obligations, surety bonds (other than bonds related to judgments or litigation), performance bonds and other obligations of a like nature, in each case, incurred in the ordinary course of business; and

e.      Liens with respect to minor imperfections of title and easements, rights-of-way, covenants, consents, reservations, encroachments, variations and zoning and other similar restrictions, charges, encumbrances or title defects affecting real property which, in the aggregate, are not substantial in amount, and which do not in any

4872-8420-9499.1

case materially detract from the value of the property subject thereto or materially interfere with the ordinary conduct of the business of the applicable Person and do not materially detract from the value of or materially impair the use by the Debtor in the ordinary course of business of the property subject to or to be subject to such encumbrance.

52.     <u>Final Hearing</u>. The Final Hearing is scheduled for [●]. 2023, at [●] before this Court in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. Within two (2) business days following entry of this Interim Order, the Debtor shall serve or cause to be served by the United States Mail, first-class postage prepaid, notice of entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>") , together with copies of the Interim Order and the Motion, on (a) the parties having been given notice of the Interim Hearing, (b) any party which has filed prior to such date a request for notices with the Court, and (c) counsel for any Committee (if and when appointed).  The Final Hearing Notice shall state that any party-in-interest shall file written objection with the Court no later than _____, 2023, at 4:00 p.m. (prevailing Central time), which objections shall be served so as to be actually received on or before such date on:  (a) proposed counsel for the Debtor, BakerHostetler LLP Elizabeth Green (egreen@bakerlaw.com,          Jimmy        Parrish     (jparrish@bakerlaw.com),        Jorian      Rose (jrose@bakerlaw.com); (b) counsel for the any statutory committee; (c) counsel for the DIP Lender,  Akerman  LLP,  Attn:    Brett  Marks  (brent.marks@akerman.com),  David  Parham (david.parham@akerman.com);  and  Adam  Swick  (adam.swick@akerman.com);  and  (d)  the Office of the U.S. Trustee of the Southern District of Texas, Houston Division.  The Final Hearing may be continued from time to time without further notice other than given in open Court.

53.     <u>Retention of Jurisdiction</u>. Notwithstanding any provision in the DIP Loan Documents, the Prepetition Term Loan Documents, the Prepetition Notes Documents or the Bridge Loan Documents, this Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Interim Order, the DIP Facility or the DIP Loan Documents.

Dated: _____, 2023

Houston, Texas

_____

Honorable David R. Jones
United States Bankruptcy Judge

42

4872-8420-9499.1

EXHIBIT 1 - BUDGET

**Kalera Inc.**

**DIP Financing - Cash Budget**

*4/8/23   thru   7/1/23*

*In Thousands of Dollars*                                                             **Cash Flow Summary**

| Week Ended -----> | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | **TOTAL** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **8-Apr** | **15-Apr** | **22-Apr** | **29-Apr** | **6-May** | **13-May** | **20-May** | **27-May** | **3-Jun** | **10-Jun** | **17-Jun** | **24-Jun** | **1-Jul** | **TOTAL** |
| **Receipts** | | | | | | | | | | | | | | |
| Customer Payments | 60.3 | 69.0 | 52.0 | 43.5 | 55.1 | 78.4 | 60.9 | 120.0 | 116.8 | 60.0 | - | - | - | 716.0 |
| Other Cash Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0 |
| *Total    Receipts* | $ 60.3 | $ 69.0 | $ 52.0 | $ 43.5 | $ 55.1 | $ 78.4 | $ 60.9 | $ 120.0 | $ 116.8 | $ 60.0 | $ - | $ - | $ - | **716.0** |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Vendor Payments | 180.0 | 170.0 | 165.0 | 130.0 | 142.0 | 170.0 | 125.0 | 135.0 | 155.0 | 170.0 | - | - | - | 1,542.0 |
| Wages & Taxes | - | 400.0 | - | 360.0 | - | 360.0 | - | 340.0 | - | 340.0 | - | - | - | 1,800.0 |
| Rent | - | - | - | - | 152.1 | - | - | - | - | - | - | - | - | 152.1 |
| Utilities | - | 188.0 | - | - | 168.0 | - | - | - | - | 168.0 | - | - | - | 524.0 |
| Duties & Freight | 65.0 | 15.0 | - | 35.0 | 20.0 | - | 30.0 | 15.0 | 15.0 | - | - | - | - | 195.0 |
| Other G&A | - | - | - | 60.0 | - | - | - | 60.0 | - | - | - | - | - | 120.0 |
| *Total    Operating Disbursements* | $ 245.0 | $ 773.0 | $ 165.0 | $ 585.0 | $ 482.1 | $ 530.0 | $ 155.0 | $ 550.0 | $ 170.0 | $ 678.0 | $ - | $ - | $ - | **4,333.1** |
| *Operating Cash Flow* | $ (184.7) | $ (704.0) | $ (113.0) | $ (541.5) | $ (427.0) | $ (451.6) | $ (94.1) | $ (430.0) | $ (53.2) | $ (618.0) | $ - | $ - | $ - | **-3,617.0** |
| *Accumulated* | (184.7) | (888.7) | (1,001.7) | (1,543.2) | (1,970.2) | (2,421.7) | (2,515.8) | (2,945.8) | (2,999.0) | (3,617.0) | (3,617.0) | (3,617.0) | (3,617.0) | |
| **Other (Sources)/ Uses** | | | | | | | | | | | | | | |
| DIP (Draw) / Paydown | (320.0) | (811.0) | (220.0) | (648.0) | (563.0) | (558.0) | (201.0) | (537.0) | (160.0) | (753.0) | (107.0) | (107.0) | (107.0) | (5,092.0) |
| Lender Professionals | 26.9 | 26.9 | 26.9 | 26.9 | 26.9 | 26.9 | 26.9 | 26.9 | 26.9 | 26.9 | 26.9 | 26.9 | 26.9 | 350.0 |
| Restructuring Costs | 28.3 | - | - | - | 28.3 | - | - | - | - | 28.3 | - | - | - | 85.0 |
| Restructuring Professionals | 76.9 | 76.9 | 76.9 | 76.9 | 76.9 | 76.9 | 76.9 | 76.9 | 76.9 | 76.9 | 76.9 | 76.9 | 76.9 | 1,000.0 |
| US Trustee | - | - | - | - | - | - | - | - | - | - | - | 40.0 | - | 40.0 |
| *Total    Other (Sources)/ Uses* | $ (187.8) | $ (707.2) | $ (116.2) | $ (544.2) | $ (430.8) | $ (454.2) | $ (97.2) | $ (433.2) | $ (56.2) | $ (620.8) | $ (3.2) | $ 36.8 | $ (3.2) | $ (3,617.0) |
| *Net Cash Flow* | $ 3.1 | $ 3.2 | $ 3.2 | $ 2.7 | $ 3.8 | $ 2.6 | $ 3.1 | $ 3.2 | $ 2.9 | $ 2.8 | $ 3.2 | $ (36.8) | $ 3.2 | |
| *Accumulated* | 3.1 | 6.3 | 9.4 | 12.1 | 15.9 | 18.5 | 21.6 | 24.8 | 27.7 | 30.5 | 33.7 | (3.2) | (0.0) | |
| | **Opening** | | | | | | | | | | | | | |
| **Ending Book Cash Balance** | $ 50.0 | $ 53.1 | $ 56.3 | $ 59.4 | $ 62.1 | $ 65.9 | $ 68.5 | $ 71.6 | $ 74.8 | $ 77.7 | $ 80.5 | $ 83.7 | $ 46.8 | $ 50.0 |
| **DIP Balance** | $ - | $ 320.0 | $ 1,131.0 | $ 1,351.0 | $ 1,999.0 | $ 2,562.0 | $ 3,120.0 | $ 3,321.0 | $ 3,858.0 | $ 4,018.0 | $ 4,771.0 | $ 4,878.0 | $ 4,985.0 | $ 5,092.0 |