IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | Chapter 11 |
| KALERA INC., | § § § | Case No. 23-90290 (DRJ) |
| Debtor. | § § | |

**DECLARATION OF MASOUD VAGHEFI, CHAIRPERSON OF THE COMMITTEE, IN SUPPORT OF APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF REID COLLINS & TSAI LLP AS SPECIAL COUNSEL, FOR <u>LIMITED PURPOSES, EFFECTIVE AS OF JUNE 12, 2023</u>**

I, Masoud Vaghefi, do state and declare as follows:

1. I am over the age of 21, of sound mind, and am competent to testify to all the matters set forth below. I am the National Sales Manager at Turatti North America, Inc., and serve as chairperson of Official Committee of Unsecured Creditors (the "<u>Committee</u>") of Kalera, Inc. (the "<u>Debtor</u>"). Pursuant to sections 328 and 1104 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Rule 2014-1, I make this declaration in support of the *Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Employment and Retention of Reed Collins & Tsai LLP as Special Counsel, For Limited Purposes, Effective as of June 12, 2023* (the "<u>Application</u>"), filed contemporaneously herewith in this Case.[1] Except as otherwise noted, I have personal knowledge as to all the information set forth below.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

124505.000001 4855-1417-2778.1

DECLARATION OF CHAIRPERSON OF THE COMMITTEE

PAGE 1

2. This declaration is provided pursuant to ¶ D.2 of the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses* (the "Guidelines") promulgated by the Office of the United States Trustee.  Proposed counsel to the Committee, Dykema, informed me that, in "larger chapter 11 cases," the Guidelines require that any application for employment of an attorney under 11 U.S.C. §§ 327 or 1103 be accompanied by a verified statement from the client that addresses the following:

 a. The identity and position of the person making the verification. In the case of proposed counsel for a chapter 11 debtor, the person ordinarily should be the general counsel of the debtor or another officer responsible for supervising outside counsel and monitoring and controlling legal costs.

 b. The steps taken by the client to ensure that the applicant's billing rates and material terms for the engagement are comparable to the applicant's billing rates and terms for other non-bankruptcy engagements and to the billing rates and terms of other comparably skilled professionals.

 c. The number of firms the client interviewed.

 d. If the billing rates are not comparable to the applicant's billing rates for other nonbankruptcy engagements and to the billing rates of other comparably skilled professionals, the circumstances warranting the retention of that firm.

 e. The procedures the client has established to supervise the applicant's fees and expenses and to manage costs. If the procedure for the budgeting, review and approval of fees and expenses differ from those the client regularly employs in nonbankruptcy cases to supervise outside general counsel, explain how and why. In addition, describe any efforts to negotiate rates including rates for routing matters, or in the alternative to delegate such matters to less expensive counsel.

A. IDENTITY OF DECLARANT

3. On April 19, 2023, the Office of the United States Trustee for the Southern District of Texas, Region 7 (the "U.S. Trustee") appointed Turatti North America, Inc. ("Turatti") to the Committee.  The Committee subsequently elected Turatti as Chair of the Committee.  Under the *Bylaws of the Official Committee of Unsecured Creditors of Kalera, Inc.* (the "Bylaws"), the Chair

of the Committee, by and through its representative, is authorized to implement decisions of the Committee in accordance with the Bylaws.

4. Turatti was directly involved in the Committee's decision to retain Reid Collins & Tsai LLP ("RCT") as special counsel to the Committee in this chapter 11 case, and actively participated in negotiating the terms of RCT's employment together with the other Committee members.

### B. Steps Taken to Ensure Comparability of Engagement Terms

5. I have confirmed with RCT that, while their billing rates vary from attorney to attorney based on such factors as the attorney's seniority and position with the firm (e.g., member, associate), years of experience, and the demand for services in the attorney's particular area of expertise, their billing rates do not vary as a function of whether the services performed relate to a bankruptcy engagement or a nonbankruptcy engagement.

6. RCT has informed the Committee that it endeavors to set the hourly rates for their attorneys and paraprofessionals at levels competitive to those charged by firms with whom it competes.

### C. Number of Firms Interviewed

7. On June 5, 2023, the Committee decided to retain special counsel by interviewing two law firms which expressed interest in serving in that capacity. Ultimately, the Committee selected RCT to serve as its special counsel based upon its expertise in chapter 11 cases, director and officer liability claims, and fraudulent transfer claims, as described in the Application and RCT Declaration, submitted by the Committee contemporaneously with this Declaration, requesting the Court's approval of the Committee's employment of RCT.

### D. OTHER CIRCUMSTANCES WARRANTING RETENTION OF RCT

8. The Committee has been informed that RCT endeavors to set the hourly rates for its attorneys and paraprofessionals at levels competitive to those charged by firms with which it competes. In addition, the Committee confirmed that (i) RCT's attorneys staffed to this engagement will not be charging a premium or in any way increasing their hourly rates over the fees charged to non-bankruptcy clients and (ii) the material terms for the engagement are comparable to terms of other comparably skilled professionals who the Committee interviewed. In connection with the interviews, the Committee evaluated the breadth of the firms' experience and areas of expertise, the firms' prior history of representing committees, debtors, creditors, and other interested parties in chapter 11 cases and the anticipated attorney's fees to be billed in connection with this Case.

### E. PROCEDURES ESTABLISHED TO SUPERVISE FEES AND EXPENSES AND MANAGE COSTS

9. Throughout this chapter 11 case, the Committee will supervise the fees and expenses incurred by RCT to manage costs. In particular, the Chairperson will review RCT's invoices and monthly applications for payment of fees and reimbursement of expenses. The Committee understands that RCT historically increases its hourly billing rates for their professionals and para-professionals on a yearly basis. The Committee has consented to such ordinary course rate increases.

10. RCT has provided the Committee with a budget and staffing plan for serving as the Committee's special counsel, each of which has been approved. To the extent the Committee has an objection to the fees and expenses RCT requests in any monthly fee statement that the Committee cannot resolve to its satisfaction informally, Dykema has informed me that it will file a Notice of Objection to Fee Statement on the Committee's behalf. In so doing, I understand that

PAGE 4

RCT reserves all rights to contest any such objection raised to the allowance or payment of its requested fees and expenses, and the Committee reserves the right to retain conflicts counsel to prosecute any such fee objection to the extent it cannot be resolved informally by the parties.

11. Nothing contained herein is intended to limit RCT's ability to request allowance and payment of fees and expenses pursuant to 11 U.S.C. §§ 330 and 331, nor to restrict RCT's rights to defend any objection raised to the allowance or payment of such fees, nor restrict the Committee's right to retain conflicts counsel to prosecute any such fee objection to the extent the parties cannot resolve it informally or raised by another party in interest, such as the U.S. Trustee.

12. Based upon the foregoing, the Committee is of the opinion that employing RCT as special counsel to the Committee is necessary and appropriate and that such employment is in the best interest of the Debtor's estate.

**F.   OTHER MATTERS**

13. RCT's hourly rates are subject to annual adjustments in January of each year to reflect economic and other conditions. I have been advised by Committee counsel that, pursuant to ABA Formal Ethics Opinion 11-458, "[p]eriodic, incremental increases in a lawyer's regular hourly billing rates are generally permissible if such practice is communicated clearly to and accepted by the client at the commencement of the client-lawyer relationship and any periodic increases are reasonable under the circumstances." I have also been specifically advised by Committee counsel that, pursuant to ABA Formal Ethics Opinion 11-458, "the client need not agree to pay the modified fee to have the lawyer continue the representation." RCT disclosed to the Committee its rates in effect as of January 1, 2023. To the extent RCT seeks to make any adjustments to its rate structure, the Committee expressly reserves the right to reject any such modification to the extent the Committee deems it reasonable

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 26, 2023

By: /s/ *Masoud Vaghefi*
Masoud Vaghefi
National Sales Manager
Turatti North America, Inc.

Chair of the Official Committee of
Unsecured Creditors of Kalera, Inc.



REID COLLINS & TSAI LLP
1301 S Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
Main:  512.647.6100
Fax:  512.647.6129
www.reidcollins.com

Lisa S. Tsai | Managing Partner
Direct:  512.647.6102
ltsai@reidcollins.com

**PRIVILEGED AND CONFIDENTIAL**
**ATTORNEY-CLIENT COMMUNICATION**

June 12, 2023

The Official Committee of Unsecured Creditors of Kalera, Inc.
Turrati North America, Inc., Chair
P.O. Box 1848
Salinas, CA 93902
Attn: Masoud Vaghefi

  Re: Limited Scope Engagement to Represent Official Committee of Unsecured Creditors of Kalera, Inc.

Dear Karry:

  Thank you for engaging our firm, Reid Collins & Tsai LLP ("**RCT**," "**Counsel**," or "**we**"), to represent the Official Committee of Unsecured Creditors of Kalera, Inc. ("**you**" or "**Client**")[1] for a limited scope engagement to review certain discovery and prepare a demand letter regarding potential claims (the "**Claims**") against the directors and officers of Debtor Kalera, Inc. and any of its affiliates and subsidiaries (collectively, the "**Potential Defendants**").[2]

  We appreciate the opportunity to represent you in this matter.  The Texas Code of Professional Responsibility requires us to document our engagement with you in writing and specify the terms and conditions of our fee engagement agreement.  That is the purpose of this written letter of engagement (the "**Agreement**" or "**Letter of Engagement**").  If you have any questions about the Letter of Engagement, or any aspect of the engagement or our relationship, please contact me immediately.

---

[1] For purposes of this engagement, and for present and future conflicts of interest purposes, our client is the Official Committee of Unsecured Creditors of Kalera, Inc. and not any of its members, parents, subsidiaries, affiliates, partners, or individual owners, officers, directors, managers, employees, or agents, unless we otherwise agree in writing and/or in a separate engagement letter.  Accordingly, representation of Client in this matter will not give rise to any conflict of interest in the event other clients of the Firm are adverse to any of such other entities or persons affiliated with Client.

[2] The Potential Defendants are ██████████████████████████████████████████████
████████████████████████████████████████

AUSTIN  |  DALLAS  |  NEW YORK  |  WASHINGTON, D.C.  |  WILMINGTON

Official Committee of Unsecured Creditors of Kalera, Inc.
June 12, 2023
Page 2 of 6

      Jeremy Wells, Dylan Jones, and I will be the primary attorneys responsible for Client's representation.  Other RCT attorneys, paralegals, and legal assistants will participate in the representation from time to time to contribute particular skills or efficiencies.  We look forward to an active, collaborative working relationship with you and your team.

      Client and RCT have agreed to the following terms for our services:

      **(1)** **Counsel's Services**.  Counsel will represent Client for two limited purposes: (a) to review certain discovery provided by your counsel at Dykema Gossett PLLC in the Chapter 11 bankruptcy proceeding styled *In re Kalera, Inc.*, Case No. 23-90290, in the Southern District of Texas, Houston Division; and (2) to prepare and send a notice and demand letter concerning potential claims against the Potential Defendants.  For avoidance of doubt, Counsel is not agreeing to undertake any other tasks under this Letter of Engagement, and an additional agreement in writing will be necessary to expand the representation.

      **(2)** **Counsel's Obligations**.  Counsel shall perform the tasks that in their judgment are necessary to perform all services contemplated by this Letter of Engagement.  Counsel shall not perform any legal services not specified in this Letter of Engagement without consultation and authorization from Client. Counsel agrees to keep Client informed of all significant events and make periodic updates.

      **(3)** **Client's General Obligations**.  Client agrees to comply with all obligations contemplated by this representation, including but not limited to making all payments required by this Letter of Engagement, cooperating fully with Counsel, keeping Counsel informed of all matters necessary for Counsel to fully represent Client, and promptly responding to Counsel's requests.  Client agrees to cooperate with Counsel, to preserve and provide relevant documents in its possession, custody, or control, to appear on reasonable notice at any and all depositions and appearances, and to comply with all of Counsel's requests in connection with the preparation and presentation of evidence related to the Lawsuit.  Client further agrees that it shall not insist upon presenting any argument that, in the opinion of Counsel, is not warranted under existing law and cannot be supported by a good faith argument for extension, modification, or reversal of existing law.  In addition, Client also agrees not to insist that Counsel pursue a course of conduct that is, in the opinion of Counsel, illegal, unreasonable, or prohibited under applicable rules of professional conduct.

      **(4)** **Client's Obligations to Preserve and Maintain Relevant Information**.  To comply with discovery obligations, it is necessary that Client preserve and maintain all information, whether in electronic or hard copy form, that is relevant to the Lawsuit.  To the extent Client has regular practices whereby information is discarded, those practices must cease immediately with respect to such information.  Client is obligated to maintain all data relevant to the Lawsuit in any and every form and must not discard anything related to the Lawsuit without first discussing such with Counsel.

**(5)** **Designation of Representative**. Counsel understands that Client has designated Masoud Vaghefi as the designated representative ("**Designated Representative**") to act on behalf of Client for all purposes in connection with Counsel's representation, including for purposes of communicating with us, receiving information and advice from us, and instructing us in this matter. In addition, we will be permitted to assume that any communication or instruction to Counsel by the Designated Representative is duly authorized by Client. Should you wish to appoint a different or additional Designated Representative in the future, please advise RCT in writing to the attention of Lisa S. Tsai.

**(6)** **Counsel's Compensation**. For our services under this Agreement, Client agrees to **hourly fees** for Counsel's services. We will charge reasonable hourly fees, based primarily upon the hourly fees that we customarily charge for attorneys working on matters of similar nature. In determining our fees, we take into consideration the factors set out under the Texas Rules of Disciplinary Procedure, guided by our hourly rates, including, but not limited to, factors such as the complexity of the case or matter, the experience of the attorneys working on the matter, the novelty of the issues involved, and the length of time of the representation, as well as other considerations.

Our partner rates range from $750 to $1700 per hour, depending upon the years of experience and expertise of the individual lawyer. Our associate hourly rates range from $425 to $675, and our paralegal hourly rates are $250 per hour. My standard billing rate is $1,150 per hour, Jeremy Wells' standard billing rate is $750 per hour, and Dylan Jones' standard billing rate is $675. We will advise you and seek your approval before incurring total hourly fees in excess of $10,000.

Following the end of each month, we will submit invoices to Kalera, Inc. (the "**Debtor**") and file interim and final fee applications in accordance with applicable laws, rules, and other any order that may be entered in the matter governing such submission. Our monthly statement will include a confidential report describing the services performed by each attorney and paralegal working on this matter. These reports may contain information protected by the attorney-client privilege. The privilege could be waived if someone other than Client sees the privileged material. This, of course, does not preclude your agents from reviewing the bills or any other materials. Therefore, we recommend that you keep all of our bills in a file marked "attorney-client privileged materials" and maintain the file in a secure location.

**(7)** **Costs and Expenses**. Subject to any guidelines imposed by the Court, we will be entitled to reimbursement of all out-of-pocket costs and expenses incurred under this Agreement. We anticipate that those expenses may include, among other things, discovery, depositions, travel, expert witnesses, expert consultants, trial consultants, local counsel, litigation management services, document or ESI consultants, document collection, storage, and hosting services, investigators, mediators, filing fees, photocopying and other document-related services, postage, facsimiles, long-distance telephone calls, delivery services, legal research databases, and other expenses reasonably incurred in the representation. Client agrees that Counsel are authorized to incur these expenses on its behalf. Again, we will submit invoices to the Debtor on a monthly

Official Committee of Unsecured Creditors of Kalera, Inc.
June 12, 2023
Page 4 of 6

---

basis and file interim and final fee applications in accordance with appliable laws, rules, and any order that may be entered in the matter governing such submissions.

**(8)** **Payment by Wire**. For ease or convenience, fees and expenses may be paid via wire-transfer, and such funds can be wired directly to Counsel's bank account as follows:

> To: Broadway National Bank
> 1177 Northeast Loop 410
> San Antonio, Texas 78209
> ABA No. 114021933
> Account No. 4100077126
> Reid Collins & Tsai LLP (IOLTA)

**(9)** **Client's Right To Terminate Counsel**. Client may terminate Counsel with or without cause. In order to terminate RCT for cause, Client must demonstrate either a material violation of the applicable disciplinary rules or breach of this Letter of Engagement.

**(10)** **RCT's Right To Withdraw**. RCT reserves the right to withdraw from further representation of Client in any of the following circumstances:

a. If Client insists upon presenting any claim or defense that is not warranted under existing law and cannot be supported by a good-faith argument for an extension, modification, or reversal of existing law.

b. If Client insists that RCT pursue a course of conduct that is illegal, unethical, unreasonable, or that is prohibited under applicable rules of professional conduct.

c. If Client fails to comply with its obligations under the Letter of Engagement, after written notice and an opportunity to cure during a reasonable time period.

d. If Client refuses to cooperate with RCT or follow RCT's advice on a material matter, after written notice of intent to withdraw and an opportunity for Client to cooperate with RCT or follow RCT's advice.

e. If RCT believes that withdrawal is appropriate for any other reason and obtains Client's consent.

f. If any court finds a material aspect of this Letter of Engagement to be unacceptable or unenforceable, including RCT's right to compensation or expenses as contemplated by this agreement.

If RCT elects to withdraw, we shall provide written notice of our intent to do so. No matter the reason for RCT's withdrawal, Client agrees to pay all outstanding fees and expenses due up to the time of withdrawal.

**(11)** **No Guarantees**.  Client acknowledges that Counsel has made no guarantees regarding the successful outcome of any claims or defenses related to the Lawsuit, and that any and all expressions about the possible outcomes are only preliminary opinions.

**(12)** **Severability**.  In case any one or more of the provisions contained in this Letter of Engagement shall for any reason be found unenforceable in any respect, the parties agree that such unenforceability shall not affect any other provision, and that all other provisions of this Agreement shall remain valid and enforceable.

**(13)** **Governing Law**.  This Agreement shall be construed in accordance with the laws of the State of Texas, without regard for its conflict-of-laws rules.

**(14)** **Integration; Amendment**.  This Letter of Engagement constitutes the final, sole, and only agreement of the parties regarding Counsel's fees and the parties' duties and obligations in this matter, and supersedes any prior written or oral understandings or agreements between the parties respecting those subjects.  This Letter of Engagement may not be modified, amended, or replaced except by another written agreement signed by the parties, or their successors or assigns.

**(15)** **Execution in Counterparts**.  It is understood and agreed that this Letter of Engagement may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes, but all of which shall constitute one and the same agreement.

**(16)** **Effective Date; Limitations**.  This Letter of Engagement shall be binding upon its execution by Client and by RCT, effective as of the date set forth on the first page of this Letter of Engagement or the last date set forth in the signature block, if later (the "**Effective Date**").

**(18)** **Availability of ADR**. The parties hereto are fully cognizant of the fact that various ADR (alternative dispute resolution) techniques and procedures may be available and/or required by law to resolve the dispute or other matters arising out of Counsel's representation of Client. These techniques and procedures include mediation, non-binding arbitration, mini-trial, summary jury trial, and early case evaluation. During the progress of the representation, Counsel will provide guidance to you concerning the availability and potential use of ADR to resolve the Dispute.

**(19)** **Client's Independent Determination as to Fairness and Reasonableness**. Client acknowledges that Client and Counsel have conflicting interests in connection with the negotiation and execution of this Letter of Engagement. Consequently, Client acknowledges that: (a) RCT has not acted as Client's counsel in preparing or negotiating this Letter of Engagement; (b) Client has made sufficient investigation and inquiry to determine that this Letter of Engagement is fair and reasonable to Client; (c) this Agreement was the product of an arm's length negotiation between Client, on the one hand, and RCT, on the other, and that the fees set forth herein are not prescribed by law but rather arrived at through negotiation; (d) Client has had ample opportunity to review the Agreement independently and, to the extent that Client has chosen to do so, with separate counsel; and (e) Client is entering into this Agreement freely and voluntarily.  Please do not sign

Official Committee of Unsecured Creditors of Kalera, Inc.
June 12, 2023
Page 6 of 6

this Letter of Engagement until you feel you have had sufficient opportunity to review and consider it and until you have received input from other counsel you think would be useful to you.

    If this Letter of Engagement accurately reflects our agreement, please sign this letter and return it to me. Thank you again for the opportunity to represent you.

    Respectfully,

    *[signature]*

    Lisa S. Tsai, Managing Partner
    REID COLLINS & TSAI LLP

**AGREED AND ACCEPTED:**

_____    Date: _____
By:  Masoud Vaghefi
    The Official Committee of Unsecured Creditors of Kalera, Inc.

this Letter of Engagement until you feel you have had sufficient opportunity to review and consider it and until you have received input from other counsel you think would be useful to you.

If this Letter of Engagement accurately reflects our agreement, please sign this letter and return it to me. Thank you again for the opportunity to represent you.

Respectfully,

*[signature]*

Lisa S. Tsai, Managing Partner
REID COLLINS & TSAI LLP

**AGREED AND ACCEPTED:**

*[signature]*            Date: 13 JUNE 23
_____

By: Masoud Vaghefi
The Official Committee of Unsecured Creditors of Kalera, Inc.